## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRISTINA HAMILTON,             ) | |
|                    ) | |
|         Plaintiff,     ) | |
|                    ) | **CIVIL ACTION** |
| v.                       ) | |
|                    ) | **No. 15-1256-JWL** |
| CAROLYN W. COLVIN,    ) | |
| **Acting Commissioner of Social Security,**    ) | |
|                    ) | |
|         Defendant.    ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

Plaintiff applied for SSI benefits, alleging disability beginning July 1, 2011. (R. 12). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred in according substantial weight to the medical opinion of the non-examining state agency

psychological consultant, Dr. McRoberts, and little weight to the other medical source opinion of Ms. Biondo, Plaintiff's primary mental health treatment provider, because evidence presented after Dr. McRoberts had reviewed the record revealed that Plaintiff's condition had deteriorated.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considered Plaintiff's claims and finds no error in the ALJ's decision.

## II.    Discussion

Plaintiff acknowledges that Dr. McRoberts is an acceptable medical source whereas Ms. Biondo is an "other" medical source.  (Pl. Br. 13).[1]  But she points out that Dr. McRoberts is a non-examining source who provided his opinion after reviewing the record evidence.  Id.  She argues that the ALJ erred in according significant weight to Dr. McRoberts's opinion and little weight to Ms. Biondo's opinion because at the time Dr. McRoberts reviewed the record and provided his opinion the record contained little evidence regarding Plaintiff's psychiatric condition beyond the reports of two psychological examinations provided by Dr. Kent who had examined Plaintiff in June 2012 and February 2013 at the request of the agency.  Id. at 14.  She points out that a week after Dr. McRoberts reviewed the record and provided his opinion, Plaintiff was given a psychiatric hospitalization and was instructed to begin mental health treatment, and that within a month thereafter she established mental health treatment with Ms.

---

[1]Plaintiff's counsel did not number the pages of the Social Security Brief she produced for Plaintiff.  Therefore, in its citations, the court has used the page numbers provided by the software it used to open and read the .pdf file from the courts Case Management/Electronic Case Filing (CM/ECF) system.

Biondo and began receiving medication management, first with Dr. Klontz and later with Mr. White, a nurse-practitioner.  (Pl. Br. 14-15).  Plaintiff also relates her history of two subsequent psychiatric hospitalizations, and argues that her history of hospitalizations and treatment after Dr. McRoberts reviewed the record "shows a clear deterioration in [Ms.] Hamilton's psychiatric condition, and rendered Dr. McRoberts's opinion stale."  Id. at 15. She argues that this evidence demonstrates the ALJ's error in relying on Dr. McRoberts's opinion while giving little weight to Ms. Biondo's opinion.  Id. at 13-15 (citing Chapo v. Astrue, 682 F.3d 1285, 1293 (10th Cir. 2012) (an ALJ's reliance on a patently stale opinion is troubling); Price v. Colvin, No. 13-1052-SAC, 2014 WL 943101 *7 (D. Kan. Mar. 11, 2014) (finding a medical consultant's opinion "clearly stale in light of the medical records added to the case record subsequent to [his] examination of the record"); Lee v. Colvin, No. 12-2259-SAC, 2013 WL 4549211 *3-4 (D. Kan. Aug. 28, 2013) (finding no material change in the plaintiff's condition after the consultant's opinion, and rejecting an Eighth Circuit case as not binding regarding "this proposition of staleness")). Plaintiff then explains how in her view greater weight should have been accorded to Ms. Biondo's opinion.  Id. at 15-19.

The Commissioner argues that the ALJ properly weighed the medical source opinions of Ms. Biondo and Dr. McRoberts and that the record evidence supports the weight accorded.  She argues that a rule regarding staleness "would require ALJs to routinely disregard state agency medical consultant opinions" contrary to the regulatory command to consider such opinions.  (Comm'r Br. 11) (citing 20 C.F.R.

5

§§ 416.927(e)(2)(i), 416.1400).  She argues that the ALJ complied with the instructions of

Social Security Ruling (SSR) 96-6p and considered the supportability of Dr. McRoberts's

opinion in light of all the record evidence, including the evidence received after Dr.

McRoberts provided his opinion.  Id. at 12.  She argues that contrary to Plaintiff's

suggestion that the subsequent treatment records indicate a material change in her

condition, "all they really indicate is that Plaintiff had become more cognizant of her

problems and had finally begun seeking treatment."  Id.  She argues that the ALJ properly

found that Dr. McRoberts's opinion was valid both before and after Plaintiff received

treatment.  Id. at 13.  Finally, she distinguishes the case of Price v. Colvin, noting that

there the court specifically found that the ALJ did not account for two medical opinions

in the record whereas here the ALJ properly considered all of the opinions.  Id.

In her Reply Brief, Plaintiff reiterates her argument that the ALJ erred in relying

on the stale opinion of Dr. McRoberts, and cites another case from a court in this district

which in her view mirrors the facts of this case.  (Reply 1-2) (citing Kreger v. Soc. Sec.

Admin., No. 14-1332-RDR, 2015 WL 3514888 *4-5 (D. Kan. June 4, 2015)).

Plaintiff builds her case on a house of cards when she attempts to argue that the

ALJ erred merely by preferring the "stale" opinion of a state agency consultant over the

other medical source opinion of a treating therapist.  The controlling question in

determining whether the ALJ properly evaluated the opinions of medical care providers is

whether the ALJ properly applied the standards for weighing the various opinions and

whether substantial record evidence supports his evaluation.  The cases cited by Plaintiff do not require a different consideration.

In Chapo, the court found that the ALJ erred in effectively rejecting the opinion of Dr. Vega solely because he was not a treating source, and failed to provide any other reason to discount his medical opinions regarding extensive mental limitations.  682 F.3d 1285 at 1291.  For that reason, the court found it necessary to remand for further proceedings.  Id. at 1292.  Thereafter, the court discussed the ALJ's evaluation of other medical opinions, noting that the ALJ gave great weight to the opinion of a non-treating state agency consultant who had examined the claimant one time and prepared a report of that examination.  Id.  The court noted that the "medical record obviously underwent material changes in the twenty months between [the consultant's] report and the ALJ's decision," and stated that the "ALJ's reliance on the patently stale opinion of [the consultant] remains troubling," but that "we do not need to make a definitive determination on this question."  Id. at 1293.  Thus, the Chapo court applied the standard for evaluating medical opinions and remanded for error in that regard.  It recognized that it did not need to make a determination regarding the stale opinion, and it did not.  It simply encouraged the ALJ to obtain updated evidence to preclude future problems in that regard.  Id.  Lee is to a similar effect.  Plaintiff argues that there the court dismissed the plaintiff's staleness argument because the "plaintiff failed to show that the 'degree, frequency, or seriousness of any medica[l] condition had materially changed since the medical opinions were given.'"  (Pl. Br. 13-14) (quoting Lee, 2013 WL 4549211 at *3).

7

Plaintiff's assertion is correct--the <u>Lee</u> court rejected the plaintiff's argument because she had not shown that opinions the ALJ relied upon were "outdated by any passage of time or by any intervening change in medical condition <u>such that the ALJ should have discounted them</u>." <u>Lee</u>, 2013 WL 4549211 at *4 (emphasis added).  Earlier, the court had already rejected "this proposition of staleness," and the Eighth Circuit case upon which it was based.  <u>Id.</u> at *3.  In <u>Lee</u>, the court rejected a rule regarding staleness <u>per se</u>, and applied the legal standard to determine if the questioned medical opinions were properly evaluated.  <u>Id.</u> at 3-4.

Price was a case decided at step two of the sequential evaluation process wherein the ALJ determined that the plaintiff's medically determinable impairments had no more than a minimal effect on his ability to do basic work activities.  2014 WL 943101 at *2. The court noted that a claim may be denied at step two only if medical evidence clearly establishes the claimant's impairments are not severe, that an adjudicator must exercise great care in applying the "not severe impairment concept," and that if the not severe finding is not clearly established the sequential evaluation process should be continued. <u>Id.</u> at *3 (quoting SSR 85-28, <u>Medical Impairments that Are Not Severe</u>).  Although the court in <u>Price</u> stated that "[t]he opinion of Dr. Williamson [the state agency non-examining consultant who reviewed the records and opined that the plaintiff's condition was not severe] was clearly stale in light of the medical records added to the case record subsequent to the examination of the record by Dr. Williamson," it did not reject the ALJ's determination merely because the opinion was stale.  Rather, it applied the legal

8

standard for evaluating medical opinions and found that the ALJ had erred in according substantial weight to Dr. Williamson's opinion.  2014 WL 943101 at *4.  The court stated three errors in the ALJ's evaluation of Dr. Williamson's opinion:  Dr. Williamson was a non-examining source, Dr. Williamson did not have before him the extensive hospital records or the opinions of two non-treating physicians who examined the plaintiff and opined that the plaintiff had severe impairments, and the ALJ erroneously discounted the opinions of the two non-treating physicians.  Id. at *4-5.  The court also considered the ALJ's rejection of the opinions of three psychologists who found severe mental impairments, and determined that was also error because the ALJ improperly relied on a finding that the psychologist who examined the plaintiff "focused on plaintiff's subjective complaints."  Id. at 5-6 (citing Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004) (ALJ must have a legal or evidentiary basis to assert that a medical report was based primarily on a claimant's subjective complaints)).  The court determined that "[s]ubstantial evidence does not support the finding of the ALJ that Plaintiff does not have a severe impairment or combination of impairments."  Id. 2014 WL 943101 at *7.

Finally, the court notes that the court in Kreger provided the greatest discussion of the plaintiff's argument that there was "evidence that plaintiff's condition deteriorated after the doctors gave the opinions relied upon by the ALJ , and therefore the ALJ's conclusion that the opinions are consistent with subsequent medical records may not be reasonable."  2015 WL 3514888 at *9 (citing Chapo, 682 F.3d at 1293; and Price, 2014 WL 943101 at *4).  But once again, the court in Kreger based its decision on an

evaluation of whether the ALJ's weighing of the medical opinions was supported by the record evidence.  Id. at *4-10.  The court specifically discussed the record of medical treatment which occurred after the medical opinions were made to which the ALJ accorded significant weight:  two hospitalizations, extensive treatment by at least two acceptable medical sources, Dr. Oestermann and Dr. Thomas, and third-party opinions provided by a case manager and a client advocate at the homeless shelter where the plaintiff had stayed for a few months.  Id. at 4-7.  The title assigned to one section of the court's opinion was "In Assessing Plaintiff's Claim for Supplemental Security Income Benefits, the ALJ Did Not Reasonably Assess Doctors' Opinions in Light of Evidence Which Arose Subsequent to Those Opinions."  Id. at 7 (capitalization altered).  The court concluded that "the ALJ failed to correctly weigh the doctors' opinions in this case largely because the ALJ failed to properly consider those opinions in light of subsequent evidence which could reasonably be construed as showing a deterioration in plaintiff's condition."  Id. 2015 WL 3514888 at *10.

Here, with regard to Plaintiff's mental impairments and limitations, the ALJ summarized the evidence, including the two consultative examinations by Dr. Kent in June 2012 and February 2013, Plaintiff's three hospitalizations, and her treatment at Spring River Mental Health beginning after her discharge from the first hospitalization. (R. 21-22)  The ALJ evaluated the opinions regarding Plaintiff's mental limitations provided by Dr. Kent, Dr. McRoberts, and Ms. Biondo.  Id. at 22-23.  He accorded some weight to Dr. Kent's opinion but noted that a greater restriction "to simple work is

warranted in order to fully accommodate the effect of the claimant's anxiety." (R. 23).
He accorded substantial weight to Dr. McRoberts's opinion because it "is well-explained,
well-supported by the medical evidence discussed above, and is consistent with the record
as a whole." (R. 22). He accorded little weight to Ms. Biondo's opinion because it is
contained in a standard check-box form with no supporting narrative or explanations, it is
not well-supported by Plaintiff's mental status examinations, and it is inconsistent with
her treatment notes and with the observations of nurse-practitioner White. (R. 23).

Plaintiff argues that "the ALJ was without standing" to discount Ms. Biondo's
opinion because it was on a check-box form since the Tenth Circuit has rejected such a
categorical rule. (Pl. Br. 15). But, the ALJ did not apply a categorical rule in this case.
He noted that the opinion was on a check-box form and that it had no narrative or
explanation for the limitations opined. And, he provided three other bases for his
decision to discount the opinion.

Plaintiff spends three pages explaining how, in her view, the record evidence
supports Ms Biondo's opinion (Pl. Br. 16-18) but she does not explain how the reasons
given by the ALJ are not supported by the evidence. The court's review of the evidence
reveals that the ALJ's reasons have support. As the ALJ suggested, the opinion reflects
Ms. Biondo's findings that of twenty mental abilities Plaintiff is moderately limited in
seven abilities, markedly limited in six abilities, and extremely limited in seven abilities.
(R. 582-83). Yet, the opinion is devoid of any support or explanation of how the
limitations were derived. While the statement clearly represents Ms. Biondo's opinion, it

is unhelpful in the sense that it does not provide any basis to determine whether it is better than another opinion.  Moreover, as the ALJ found, the opinion is not supported by recent mental status examinations.  (R. 503, 533, 547, 555).  It is not consistent with Plaintiff's treatment notes (R. 499-500, 533) or with Mr. White's observations.  (R. 533) ("It should be noted that client's mental status exam is not entirely consistent with her identifying worsening of depressive and anxiety symptoms.").

Plaintiff tangentially addresses one of these reasons when she argues that she became tearful when Mr. White discussed PTSD symptoms and she asked not to discuss them, and that Mr. White noted Plaintiff isolated herself and had "accomplices" who performed chores away from home for her.  (Pl. Br. 18).  She argues that this evidence supports the marked limitations opined by Ms. Biondo.  Id.  But, that is not the only way to view that evidence.  Alternatively, it might be seen as Mr. White's recognition of an attempt by Plaintiff to show greater symptoms than actually present.  In the same treatment note Mr. White recognized the "possibility of psychiatric symptoms in order to get Social Security disability."  (R. 533).  The point is that the record evidence supports the ALJ's evaluation at least as well as it supports Plaintiff's view, and the question before the court is whether the decision is supported by the record evidence.  Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by

substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

Plaintiff does not address any of the ALJ's reasons for discounting Dr. McRoberts's opinion, but she argues that the record contains significant and material evidence showing that Plaintiff's condition deteriorated after Dr. McRoberts opined based upon the evidence then of record.  Assuming without deciding that Plaintiff's assertion is true, one of the reasons the ALJ accorded substantial weight to Dr. McRoberts's opinion was because it is "consistent with the record as a whole."  (R. 22).  Plaintiff does not even attempt to show record evidence inconsistent with Dr. McRobert's opinion.  While Dr. McRoberts's opinion was one year and one week old when the ALJ issued his decision, that does not mean that the ALJ did not make his decision based upon <u>all</u> of the record evidence and did not evaluate Dr. McRoberts's opinion based upon an updated view of the evidence.  The question on judicial review is not whether the medical opinions on which the ALJ relied are old ("stale," to use Plaintiff's characterization), but whether the ALJ evaluated all of the opinion evidence in accordance with the correct legal standard and whether the record evidence supports his evaluation.  The answer to both questions in this case is yes, and the presence of evidence potentially suggesting a deterioration in Plaintiff's condition after Dr. McRoberts opined does not change that.  Plaintiff has not shown error in the ALJ's consideration or rationale, and failing that she cannot prevail.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 1st day of September 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

14